1   RUFFIN B. CORDELL [admitted *pro hac vice*]
    cordell@fr.com
2   **FISH & RICHARDSON, P.C.**
    1425 K  STREET, N.W., SUITE 1100
3   WASHINGTON, D.C.  20005
    TELEPHONE:  202-783-5070
4   FACSIMILE:   202-783-2331

5   JERRY T. YEN (SBN 247988)
    yen@fr.com
6   **FISH & RICHARDSON, P.C.**
    500 ARGUELLO STREET, SUITE 500
7   REDWOOD CITY, CA 94063
    TELEPHONE:  650-839-5070
8   FACSIMILE:  650-839-5071

9   **Attorneys for Plaintiff**
    **MONOLITHIC POWER SYSTEMS, INC.**

10

11

12                      UNITED STATES DISTRICT COURT
                        CENTRAL DISTRICT OF CALIFORNIA
13                          WESTERN DIVISION

14  MONOLITHIC POWER SYSTEMS,          Case No. CV-10-01533 CAS (AGRx)s
    INC.
15                                     **MONOLITHIC POWER SYSTEMS,**
                                       **INC.'S MEMORANDUM IN**
16              Plaintiff,             **OPPOSITION TO SILERGY**
                                       **CORPORATION'S MOTION TO**
17  v.                                 **DISMISS**

18  SILERGY CORPORATION and            Date: January 10, 2010
    SILERGY TECHNOLOGY                 Time: 10:00 a.m.
19                                     Ctrm: 5
                Defendants.
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  Introduction ................................................................................................... 1

II.  Background .................................................................................................. 3

III.  Argument ..................................................................................................... 6

   A.  The Court Should Deny Silergy's Motion to Dismiss for
       Lack of Personal Jurisdiction ................................................................ 6

      1.  The Legal Standard for Dismissal Pursuant to
          Federal Rule 12(b)(2) ............................................................... 6

      2.  Silergy's Direct and Indirect Contacts with the
          State of California Justify a Finding That Personal
          Jurisdiction Exists ................................................................... 7

         a.  Silergy purposefully directed its activities at California
            residents ....................................................................... 8

         b.  MPS's claim arises out of or relates to Silergy's
            activities in California ................................................ 14

         c.  The exercise of jurisdiction over Silergy is
            reasonable and fair ..................................................... 15

   B.  If the Court is Unable to Find Personal Jurisdiction at this
       Juncture, MPS Should Be Permitted to Take
       Jurisdictional Discovery ...................................................................... 16

   C.  Silergy Was Properly Served Under California Law By
       Effecting Substitute Service on Michael Grimm, an
       Officer of Silergy Tech, In Its Capacity as the General
       Manager of Silergy ............................................................................... 17

      1.  The Federal Rules Permit Service of Process Using
          uCalifornia Law ...................................................................... 17

      2.  Under California law, a Corporation May Be
          Served Through its General Manager ...................................... 17

      3.  Silergy Tech is Silergy's General Manager Under
          California Law ......................................................................... 18

      4.  If the Court is Unable to Determine Whether
          Silergy Was Properly Served, MPS Should Be
          Permitted to Take Additional Discovery on this
          Issue ........................................................................................ 20

   D.  Service Under the Hague is not Required Here ................................. 21

IV.  CONCLUSION ........................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Asahi Metal Indus. Co. v. Superior Court*,
  480 U.S. 102 (1987)................................................................8, 10

*Avocent Huntsville Corp. v. Aten Int'l Co. Ltd*,
  552 F.3d 1324 (Fed. Cir. 2008).....................................................14

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994)...................................................passim

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985)....................................................................15

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945).......................................................................7

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
  395 F.3d 1315 (Fed. Cir. 2005)..................................................9, 16

*Cosper v. Smith & Wesson Arms Co.*,
  53 Cal. 2d 77, 346 P.2d 409 (1959)...............................................19

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*,
  297 F.3d 1343 (Fed. Cir. 2002)...................................................6, 7

*Eclipse Fuel Eng'g Co. v. Superior Court*,
  148 Cal. App. 2d 736, 307 P.2d 739 (1957)...........................18, 19, 20

*Elecs. For Imaging, Inc. v. Coyle*,
  340 F.3d 1344 (Fed. Cir. 2003)...................................................7, 16

*Gibble v. Car- Lene Research, Inc.*,
  67 Cal. App. 4th 295, 78 Cal. Rptr. 2d 892 (1998) ...........................18

*Halo Elecs, Inc. v. Bel Fuse Inc.*,
  Slip .............................................................................18, 20

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
  466 U.S. 408 (1984)........................................................................7

*Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd.*,
  No. 2:05cv185, 2005 WL 3299718 (E.D. Tex. Dec. 5, 2005) ...............11

*LG Elecs. Inc. v. Asustek Computers*,
  126 F. Supp. 2d 414 (E.D.Va. 2000) ...............................................11

*LG Phillips LCD Co. v. Chi Mei Optoelectronics, Corp.*,
  551 F. Supp. 2d 333 (D. Del. 2008)..................................................12

ii

*Mazda Motor of Am. Inc.*,
   560 F. Supp. 2d 928, 929 (C.D. Cal. 2008) ............................................17, 18, 21

*Motorola, Inc. v. PC-Tel, Inc.*,
   58 F. Supp. 2d 349 (D. Del. 1999) ...........................................................12

*Nidec Corp. v. LG Innotek Co., Ltd.*,
   No. 6:07-CV-108, 2008 WL 7048882 (E.D. Tex. Dec. 11, 2008) ....................12

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
   No. 2010-1100, --- F.3d ----, 2010 WL 4539396 (Fed. Cir. Nov. 12, 2010) .........
   .....................................................................................................6, 15

*Overland Machined Prods., Inc. v. Swingline, Inc.*,
   224 Cal. App. 2d 46, 36 Cal. Rptr. 330 (1964) ...................................18, 19

*Sims v. Nat'l Eng'g Co.*,
   221 Cal. App. 2d 511, 34 Cal. Rptr. 537 (1963) ..................................18, 20

*Socony-Vacuum Oil Co. v. Superior Court of City and County of San Francisco*,
   35 Cal. App. 2d 92 (1939) ................................................................18

*Trintec Indus. v. Pedre Promotional Prods.*,
   395 F.3d 1275 (Fed. Cir. 2005) ......................................................6, 16

*Viam Corp. v. Iowa Export-Import Trading Co.*,
   84 F.3d 424 (Fed. Cir. 1996) ..............................................................7

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   486 U.S. 694 (1988).....................................................................21, 22

*Yamaha Motor Co., LTD v. Superior Court*,
   174 Cal. App. 4th 264 (Cal. App. 4th Dist. 2009)..............................22

STATUTES

35 U.S.C. § 271(b) ...............................................................................14

Cal. Code Civ. Proc. § 413.10(c) ......................................................21

Cal. Code Civ. Proc. § 416.10(b).........................................17, 19, 21

OTHER AUTHORITIES

Federal Constitution.............................................................................7

Fed. R. Civ. P. 4 .................................................................................19

Fed. R. Civ. P. 12(b)(2) ......................................................................6

iii

## I.     INTRODUCTION

Monolithic Power Systems, Inc. ("MPS") submits this brief in opposition to the motion to dismiss for lack of personal jurisdiction and insufficient service filed on November 17, 2010 (Dkt. 23) ("the Motion to Dismiss" ) by Silergy Corporation ("Silergy").

### *Personal Jurisdiction*

Silergy's motion should be denied because MPS has presented a *prima facie* showing of jurisdictional facts confirming this Court's jurisdiction over Silergy:

- **Silergy sells the infringing circuits for use in products sold in California.**  Silergy sells, offers to sell, or otherwise directly or indirectly serves the market for the accused integrated circuit products, including by knowingly selling them to third party manufacturers, such as Acer, Inc. ("Acer"), who in turn integrate these circuits into a variety of consumer products (e.g., Acer notebooks), and place them for sale in retail stores, like Costco and Walmart, that have outlets throughout California.

- **Silergy was registered to do business in California.**  Silergy's founder Wei Chen—who initially left MPS in San Jose, California to start Silergy also in San Jose, California—initially registered Silergy in California and designated himself as its California agent for process.  While Silergy has since let its California registration lapse, it was registered during a portion of the time period relevant for this suit, and continues to conduct business (albeit unregistered) in California.

- **Silergy conducts marketing in California through a California address.** Silergy directs marketing and advertising towards California, including through its website which explicitly encourages customers to contact Silergy via their address in San Jose, California.

1

- **Silergy has sought intellectual property to protect the brand name of the infringing circuits in the U.S., including California.** Silergy has repeatedly attempted to secure trademark protection, using a California-based attorney, to protect its brand name and products in the United States and California.

- **Silergy designs the accused technology in California.** Upon information and belief, Silergy uses another Wei Chen creation, Silergy's California-based subsidiary, Silergy Technology ("Silergy Tech"), as its research and design arm to design, *inter alia*, the accused integrated circuits.

With at least this extent of California business activity, finding jurisdiction over Silergy cannot offend "traditional notions of fair play and substantial justice."

### *Service of Process*

Silergy was served through service upon its VP of Engineering, Michael Grimm, or in the alternative, its "general manager," Silergy Tech.

California law permits service of process on a "general manager" of a corporation, a term which California courts have broadly defined to include *any agent of the corporation that can make it reasonably certain the defendant will be apprised of the service made*. Under this definition, Silergy Tech is a "general manager" of Silergy. MPS served the Amended Complaint on Michael Grimm, the current President of Silergy Tech (and Silergy's apparent VP of Engineering), Silergy's San Jose, California-based affiliate. Given the overlap in control (at least through Messrs. Chen and Grimm) between Silergy and Silergy Tech, it is clear that Silergy Tech serves as a California-based agent of Silergy. Further, because regular communication between the two is inevitable, it is certain that Silergy would be apprised of the service made on Silergy Tech through Mr. Grimm.

2

For at least these reasons, the Motion to Dismiss should be denied.

## II.      BACKGROUND

MPS, a San Jose-based analog semiconductor company, filed its First Amended Complaint on September 21, 2010 against Silergy and Silergy Tech asserting infringement of United States Patent Nos. 6,897,643 and 7,714,558.  On October 13, 2010, Michael Grimm—the President of Silergy Tech and Silergy's apparent VP of Engineering—was served in San Jose, California with the summons and first amended complaint for both Silergy and Silergy Tech.  (Proof of Service upon Silergy (11/17/10), Dkt. #22; Proof of Service upon Silergy Tech. (11/17/10), Dkt. #21.)  On November 22, 2010, Silergy filed a motion to dismiss alleging lack of personal jurisdiction and improper service of Silergy.

Although incorporated in the Cayman Islands, Silergy does business in both the United States and China.  (Bus. Entity Detail by Cal. Sec'y of State for Silergy, http://kepler.sos.ca.gov/cbs.aspx (last visited Dec. 3, 2010), Ex. 1; Silergy Contact Us, http://www.Silergy.com (last visited Dec. 3, 2010), Ex. 2.)  The CEO of Silergy is Wei Chen—formerly MPS's Vice President of Applications and Engineering.  Mr. Chen left MPS to start Silergy, which he founded on February 7, 2008.  In 2008, Mr. Chen registered Silergy in California and designated himself as the company's California agent for service of process at 1879 Lundy Avenue #126, San Jose, CA 95131.  (Statement and Designation by Foreign Corp., Dec. 5, 2008., Ex. 3.)

Silergy manufactures and sells, among other products, integrated circuits, including the accused synchronous step-down DC/DC regulator products from the Silergy SY8033 product family.  (Silergy Products, http://www.Silergy.com (last visited Dec. 3, 2010), Ex. 4.)  Silergy manufactures and sells the accused products to large consumer electronics manufacturers such as Acer Inc.  (*See* Wong Decl. ¶¶3-5, Ex. 5.)  Then, these manufacturers (such as Acer) incorporate Silergy's products into

3

consumer electronics such as laptop computers, which are then distributed to large retail stores across the United States, including both Walmart and Costco.  (Wong Decl. ¶¶3-5, Ex. 5; Costco Warehouse List for Cal., http://www.costco.com/Warehouse/WarehouseList.aspx# (last visited Dec. 3, 2010), Ex. 6; Walmart Description of Acer Aspire One AO533-13531 Netbook Pc, http://www.walmart.com/ip/Acer-AO533-13531/14644585, (last visited Dec. 6, 2010), Ex. 7.)

In April 2008, Mr. Chen formed a second, subsidiary company, Silergy Tech, a corporation organized and existing under the laws of the State of California with its original principal place of business at the same Lundy Avenue address as Silergy. (Bus. Entity Detail by Cal. Sec'y of State for Silergy Tech, http://kepler.sos.ca.gov/cbs.aspx (last visited Dec. 3, 2010), Ex. 8.)  Mr. Chen named himself President and Secretary of Silergy Tech and also designated himself as its initial agent for service of process at the same Lundy Avenue address where Silergy Tech is located.  (Articles of Inc. of Silergy Tech, Apr. 7, 2008, Ex. 9; Certificate of Amendment of Articles of Inc. of Silergy Tech, Jul. 28, 2008, Ex. 10; Action by Unanimous Written Consent in Lieu of the Org. Mtg. by the Board of Directors of Silergy Tech, Apr. 10, 2008, Ex. 11.)  As stated above, Michael Grimm, on information and belief, is the current President of Silergy Tech.  (*See* Silergy Tech Bus. Summary, http://california.14thstory.com/silergy-technology.html (last visited, Dec. 6, 2010), Ex. 12.)  Mr. Grimm is also listed as the Vice President of Engineering for Silergy and a contact for Silergy on a publicly available Silergy document entitled "About Silergy Corp." (About Silergy Corp., http://www.docin.com/p-11052465.html, (last visited Nov. 28, 2010), Ex. 13) and several other websites posting job openings for Silergy.  (Silergy Semiconductor Tech. Co., Ltd. Job Openings, http://bbs.uestc.edu.cn/cgi-bin/bbstcon (last visited Nov. 28, 2010), Ex. 14;

Silergy Semiconductor Tech. Co., Ltd. Recruiting Info,

http://ee.zju.edu.cn/redir.php?catalog_id=7449&object_id=11174 (last visited Nov.

28, 2010), Ex. 15.)

Upon information and belief, Silergy Tech functions as the research and design

arm of Silergy.  Between October 2008 and May 2009, Silergy Tech filed at least

seven United States patent applications covering technologies related to the integrated

circuit products at issue, four of which name Mr. Chen as an inventor.  (U.S. Patent

Publication Nos. 20100097045(A1), 20100102386(A1), 20100123443(A1),

20100124086(A1), 20100244788(A1), 20100301413(A1), 20100301827(A1), Ex.

16.)

On February 2, 2009, less than one year after forming Silergy Tech, Silergy

surrendered its California registration.  Certificate of Surrender of Right to Transact

Intrastate Bus., Feb. 2, 2009, Ex. 17.)  Silergy's website, however, continues to

indicate the same Lundy Avenue address in San Jose as a primary contact address on

its website.  (Silergy Contact Us, http://www.Silergy.com (last visited Dec. 3, 2010),

Ex. 2.)  In February and May 2009, California attorney Michael C. Stephens Jr. filed

on Silergy's behalf applications for United States federal trademark registrations for

SILERGY and the Silergy logo that it displays on its website (www.Silergy.com) and

in its product advertising materials.  (Trademark Elec. Search Sys. Result 2 of 3 for

Silergy, http://tess2.uspto.gov/bin/showfield?f=doc&state=4002:a00ata.2.2 (last

visited Dec. 3, 2010), Ex. 18; Trademark Elec. Search Sys. Result 3 of 3 for Silergy,

http://tess2.uspto.gov/bin/showfield?f=doc&state=4002:a00ata.2.3 (last visited Dec.

3, 2010), Ex. 1.)

Monolithic Power Sys Memo in Opp to Silergy Mtn to Dismiss
Case No. CV-10-01533 CAS (AGRx)s

## III.   ARGUMENT

### A.   The Court Should Deny Silergy's Motion to Dismiss for Lack of Personal Jurisdiction

#### 1.   The Legal Standard for Dismissal Pursuant to Federal Rule 12(b)(2)

The law of the Federal Circuit, rather than the Ninth Circuit, applies to determinations of personal jurisdiction in patent cases. [1] *Nuance Commc'ns, Inc. v. Abbyy Software House*, No. 2010-1100, --- F.3d ----, 2010 WL 4539396, at *3 (Fed. Cir. Nov. 12, 2010)); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir. 1994).  In order to survive a motion to dismiss, plaintiff responding to a pre-discovery motion to dismiss "need only make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003); *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005).  "In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Elecs For For Imaging*, 340 F.3d at 1349 (citing *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002) and *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).).

---

[1]In fact, the only caselaw Silergy cites to in its Motion to Dismiss on this issue rely on Ninth Circuit authority for establishing personal jurisdiction—that is, Silergy fails to cite any Federal Circuit authority for the correct application of the personal jurisdiction analysis in patent infringement cases, as it is required.  (*See* Silergy's Mot. to Dismiss, at 4-7 (11/17/10), Dkt. # 23.)

**2.      Silergy's Direct and Indirect Contacts with the State of California Justify a Finding That Personal Jurisdiction Exists**

California's jurisdictional statute is co-extensive with federal due process requirements; therefore, jurisdictional inquiries under state law and federal due process standards merge into one analysis: "whether jurisdiction comports with due process." *Id.* at 1360; *see also Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 427 (Fed. Cir. 1996) (explaining that because the California long arm statute extends the reach of personal jurisdiction to the full limits of the Federal Constitution, the question "is whether sufficient contacts exist between [defendant] and the State of California to satisfy the requirements of *International Shoe [Co. v. Washington*, 326 U.S. 310 (1945)]").

The exercise of jurisdiction over non-resident defendants satisfies due process requirements when those defendants have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.  The minimum contacts test can be satisfied by showing that the non-resident defendant has continuous or systematic contacts with the forum (general jurisdiction) or that the defendant purposefully directed accused activities toward the forum and that the litigation results from alleged injuries that arise out of or relate to those activities (specific jurisdiction). *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).  In the present case, the Court has jurisdiction over Silergy under either approach.

For purposes of establishing specific jurisdiction, the Federal Circuit has distilled the pertinent Supreme Court jurisprudence to a three-factor test.  *Deprenyl*, 297 F.3d at 1351.  "The three factors for determining whether the exercise of personal jurisdiction over an out-of-state defendant comports with due process are: 1) whether the defendant 'purposefully directed' its activities at the residents of the forum; 2) whether the claim 'arises out of or relates to' the defendant's activities in the forum;

7

3) whether the exercise of jurisdiction is 'reasonable and fair.'" *Id.* Through placement of infringing products into an established distribution channel and its direct marketing and advertising to California residents, Silergy purposefully directed activities at the residents of California.

a. **Silergy purposefully directed its activities at California residents**

Controlling Federal Circuit precedent applies the stream of commerce theory and has clearly found that placing infringing products into an established distribution channel – like Silergy's use of the distribution channel for Acer netbooks – constitutes purposeful minimum contacts sufficient to support personal jurisdiction. For example, the Federal Circuit in *Beverly Hills Fan* noted "[t]he allegations are that defendants purposefully shipped the accused fan into [the forum state] through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction." 21 F.3d at 1565. The same facts are fully applicable to Silergy here, and accordingly, Silergy's purposeful minimum contacts with California have been established.

The *Beverly Hills Fan* Court's minimum contacts analysis included discussion of the Supreme Court split regarding the sufficiency of minimum contacts analysis established through operation of a stream of commerce in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987). *Id.* at 1566. In *Beverly Hills Fan*, the plaintiff brought suit in Virginia against a Chinese corporation that manufactured the accused product in Taiwan, and a New Jersey corporation that imported the accused product into the United States. Although the defendants claimed not to have sold the accused products in Virginia, accused products were available through third party retail outlets in the state. Despite defendants' arguments that they had not directly shipped the accused products to Virginia, had no assets, employees, license to do business, or

8

agents for service of process in Virginia, the Federal Circuit concluded that personal jurisdiction existed.  *Id.* at 1560, 1565-67.

Notably, the court in *Beverly Hills Fan* concluded that placement of infringing products into the stream of commerce through an established distribution channel satisfies both Justice Brennan's view, which requires only that the stream of commerce be a "regular and anticipated flow of products from manufacture to distribution to retail sale," and Justice O'Connor's view, which requires a showing of additional conduct directed toward the forum.  *Id.*  On the facts presented, the Court found that both stream of commerce theories are satisfied where "defendants, acting in consort, placed the accused [product] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought to court there."  *Id.*  MPS has made the same jurisdictional showing in this case as the *Beverly Hills Fan* plaintiff.

The present case is also directly analogous to *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005), which Silergy ignores completely.  In *Chi Mei*, a patentee asserted personal jurisdiction over a Taiwanese manufacturer of allegedly infringing components that were incorporated into another companies' products and imported into the United States.  *Id.* at 1317. The *Chi Mei* patentee failed to present *any* evidence of pre-filing sales of devices incorporating the infringing products in Delaware, and the district court dismissed the lawsuit for personal jurisdiction.  *Id.* at 1318.  On appeal, however, the Federal Circuit vacated the district court's dismissal and found that the overseas manufacture of components for incorporation in downstream products ultimately consumed in Delaware satisfied one of the two competing Due Process standards for personal

jurisdiction under the Supreme Court's decision in *Asahi*.[2]  Having done so, the Court remanded the case for jurisdictional discovery to determine whether the patentee could also meet the Justice O'Connor standard in *Asahi* for stream of commerce jurisdiction.  *Id.* at 1323.  The Court suggested that pertinent evidence capable of satisfying the O'Connor standard might include "knowledge that its products were being shipped in Delaware," "design and marketing efforts directed to the U.S. market (including Delaware)," and "the existence of marketing arrangements and demonstration that [defendant's] website serves as a channel for providing regular advice to customers in the forum state."  *Id.* at 1322-23 (internal quotations and citations omitted).

Silergy does far more than simply place the accused infringing products into the "stream of commerce," and could reasonably foresee that the infringing products would end up in California.  Silergy's actions justify a finding of specific jurisdiction under the "stream of commerce" theory.

Silergy sells the accused products to third parties which integrate the products into consumer electronic products, such as laptop netbooks.  Silergy does not dispute that Acer is one such vendor, and that Acer sells laptop computers that contain the accused Silergy products in California.  (See Wong Decl. ¶¶3-5, Ex. 5.)  Acer is a well-established company that has been in existence since 1976 and has been selling computers worldwide since 2000.  (Acer Group Milestones, http://www.acer-group.com/public/The_Group/milestones.htm (last visited Dec. 3, 2010), Ex. 21.)  On its website, Acer advertises that it provides products in the Unites States and maintains a headquarters in San Jose, California.  (Acer Group Contact, http://www.acer-group.com/public/index/contact.htm (last visited Dec. 3, 2010), Ex.

---

[2] The Federal Circuit found that the evidence of a large volume of goods incorporating the infringing devices in Delaware satisfied the Justice Brennan standard for stream of commerce jurisdiction set forth in *Asahi*. 395 F.3d at 1320-23.

22.)  Silergy understands that the accused products are supplied to global corporations such as Acer which, in the second quarter of 2010, reportedly had the third highest sales of notebooks (over 2 million) in the United States.  (Gartner Says Worldwide PC Shipments Increased 21 Percent in Second Quarter of 2010, http://www.gartner.com/it/page.jsp?id=1401136 (last visited Dec. 6, 2010), Ex. 23.) Acer distributes its laptop computers through several outlets in California.  For example, Acer computers are available via Walmart and Costco retail outlets, which both have several locations in California.  (Wong Decl., at ¶¶3-5, Ex. 5; Costco Warehouse List for Cal., *supra* section II, Ex. 6; Walmart Description of Acer Aspire One AO533-13531 Notebook, Pc, *supra* section II, Ex. 7.)  That Silergy may not have sold directly to retail stores in the United States is of no consequence.  Based on Acer's high volume sales into the United States through big box retail stores, Silergy is doubtless aware that Silergy's circuits incorporated in Acer products would be destined for the United States and California.  *See LG Elecs. Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 420 (E.D.Va. 2000) (finding purposeful direction where Defendant directed its activities at Virginia because it continued to supply goods to its subsidiary with the presumed knowledge they would arrive in Virginia-- "[r]egardless of whether [Defendant] delivered the products in Taiwan or directly to Virginia, [Defendant] places the products into the stream of commerce with the expectation that [Defendant's wholly-owned subsidiary] will further assemble the products, and distribute them throughout the United States.")[3]

---

[3]  In fact, district courts have regularly found personal jurisdiction over foreign component suppliers selling components for integration into products imported and sold in the United States.  *Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd.*, No. 2:05cv185, 2005 WL 3299718, at *4 (E.D. Tex. Dec. 5, 2005) (holding that a foreign component supplier "knew and expected" its products would be sold in the forum state and thus was subject to personal jurisdiction because the supplier had an exclusive U.S. supplier that sold its products to a "nationwide retailer" with locations

In addition to placing its products into established distribution channels, Silergy has a significant amount of additional activity directed towards advertising and marketing to California residents and to the United States.  Silergy's CEO Wei Chen founded Silergy on February 7, 2008 and registered the company in California and with himself as the company's California agent for service of process at 1879 Lundy Avenue #126, San Jose, CA 95131. (Bus. Entity Detail by Cal. Sec'y of State, *supra* section II, Ex. 1.)  Although Silergy surrendered its California registration in December 2008, the corporation did not abandon its contacts with California—rather, as discussed below, it carefully cultivated them.

Silergy specifically advertised and marketed its products based on the company's origins and continued presence in California.  The "HOME" page of its current website clarifies that the company was "founded by a group of technology innovators and business leaders from *Silicon Valley*."  (Silergy Home, *supra* section II, Ex. 20 (emphasis added).)  Indeed, the website's "Products" page broadly describes Silergy's product offering (Silergy Products, *supra* section II, Ex. 4), and the "Contact Us" page explicitly directs customers to contact Silergy via the Lundy Avenue address in San Jose, California—the same address Mr. Chen used as the

in the forum state.); *LG Phillips LCD Co. v. Chi Mei Optoelectronics, Corp.*, 551 F. Supp. 2d 333, 339-41 (D. Del. 2008) (finding foreign component supplier could not "credibly claim that 'it had no inkling'" that some of its LCD modules would be distributed to the forum state because the supplier sold its LCD modules to a global personal PC corporation that distributed to "well-known national retail stores." ); *Nidec Corp. v. LG Innotek Co., Ltd.*, No. 6:07-CV-108, 2008 WL 7048882, at *5 -6 (E.D. Tex. Dec. 11, 2008) (finding personal jurisdiction over foreign component supplier because the supplier had a "reasonable expectation that [the accused products] would eventually be sold at nationwide retailers."); *Motorola, Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 354-56 (D. Del. 1999) (finding a foreign component supplier was subject to personal jurisdiction in the forum state because the supplier contracted with and sold the accused products to "entities that have a market presence both nationally and world-wide.")

corporation's agent for service of process.  (Silergy Contact Us, *supra* section II, Ex. 2.)  To further demonstrate Silergy directed its sales activities to the United States and California, in February and May 2009, California based attorney Michael P. Stephens, Jr. filed applications on Silergy's behalf for United States federal trademark registrations for SILERGY and the Silergy logo displayed on Silergy's website (www.Silergy.com) and in its product advertising materials.  (Trademark Elec. Search Sys. Result 2 of 3 for Silergy, *supra* section II, Ex. 18; Trademark Elec. Search Sys. Result 3 of 3 for Silergy, *supra* section II, Ex. 19.)  Silergy used these United States registered trademarks to identify various products, including the accused products. As discussed above, Silergy also establishes its presence in the United States through the research and design efforts of its subsidiary Silergy Tech, efforts which overlap directly with the integrated circuits technology of the accused products.[4]

---

[4] In addition to Silergy, Mr. Chen formed a second, affiliated company, Silergy Tech, in April 2008.  Mr. Chen named himself President and Secretary of Silergy Tech and also designated himself as its initial agent for service of process at the same Lundy Avenue address as he did for Silergy where, it appears, Silergy Tech is currently located.  Silergy has attempted to bolster its United States market share for its products by developing new technologies and filing United States patent applications through this subsidiary in California, which appears to serve as the research and development unit for Silergy  For example, between October 2008 and May 2009, Silergy Tech filed at least seven United States patent applications covering technologies related to the products at issue in this case.  (U.S. Patent Publication Nos. 20100097045(A1), 20100102386(A1), 20100123443(A1), 20100124086(A1), 20100244788(A1), 20100301413(A1), 20100301827(A1), Ex. 16.)  Mr. Chen is a named inventor in four of these United States patent applications.  Silergy's efforts to acquire United States patents through its Silergy Tech affiliate in California further demonstrates Silergy's interest in protecting its market share and purposefully directing the use and sale of its products in the United States and California.

13

### b.    MPS's claim arises out of or relates to Silergy's activities in California

MPS's claims arise out of or relate to both Silergy's and Silergy Tech's activities in California, and Silergy does not dispute this in its opening brief.[5]   Selling, or making offers to sell, infringing products for import in the forum state is related to a claim of patent infringement significant to satisfy the "arising out of" and "relating to" prong of a due process test.  *Beverly Hills Fan,* 21 F.3d at 1565-66 ("Due Process Claus is met when an action for patent infringement is alleged to arise out defendants activities in purposefully shipping accused products into the forum through an established distribution channel)*; Avocent Huntsville Corp. v. Aten Int'l Co. Ltd,* 552 F.3d 1324, 1332 (Fed. Cir. 2008) (a claim for patent infringement alleging that a defendant makes, uses, offers to sell, sells, or imports products or services arises out of and relates to a defendant's commercialization of the accused products or services in the forum).  As described above, Silergy has purposefully shipped accused products destined for California through distribution channels third parties such as Acer, Costco, and Walmart have established.  Via its website, Silergy also directs customers seeking product information to its Lundy Avenue address in San Jose, California.  By providing product information to customers in California, Silergy encourages its customers to use, purchase, and sell the accused products and, thereby, at least actively induces infringement pursuant to 35 U.S.C. § 271(b) in the forum. MPS's claim for patent infringement arises out of or relates to Silergy's commercial activity and efforts to sell accused products in third party products and through

---

[5]   Although Silergy, in its opening brief, recognizes that the due process test for personal jurisdiction includes analyzing whether the controversy arises out of the defendant's contacts with the forum state, Silergy does not include any argument to rebut this proposition.  Accordingly, Silergy concedes this factor.

established distribution channels which are imported and sold to California residents. The second prong of the due process test, therefore, is met.

        **c.**      **The exercise of jurisdiction over Silergy is reasonable and fair**

Jurisdiction over Silergy is fair and reasonable and Silergy has failed to meet the significant burden required to demonstrate that the Court should not exercise personal jurisdiction in this case.  "When a defendant seeks to rely on the fair play and substantial justice factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Nuance Commc'ns,* No. 2010-1100, --- F.3d ----, 2010 WL 4539396, at *4 (internal quotations omitted).  Defeats of otherwise constitutional personal jurisdiction are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.  *Id.*

Where a defendant deliberately engages in significant activities within a state, or has created continuing obligations between it and residents of that state, jurisdiction is reasonable because the defendant has manifestly availed itself of the privilege of conducting business within that jurisdiction.  *See Burger King v. Rudzewicz,* 471 U.S. 462, 471-476 (1985).  It is presumptively reasonable to require such defendant to submit to the burdens of litigation in that state because his activities are shielded by the benefits and protections of that state's laws.  *See id.* at 476.  Jurisdiction is also fair and reasonable because California has an interest in hearing this dispute.  California has an interest in discouraging injuries that occur within the state.  *See, e.g., Beverly Hills Fan,* 21 F.3d at 1568.  In addition, even though Silergy is incorporated in the Cayman Islands, as discussed above, Silergy deliberately directs

15

its products to California, markets its products in California, enlists attorneys in California in an effort to bolster its marketing efforts through trademark filings, and promotes the research and development of its products in California through Silergy Tech.  Silergy manifestly availed itself of the privilege of conducting business in California and it is presumptively reasonable to require Silergy to submit to the burdens of litigation in California because California protects and shields its activities.  *See id.* at 476.  Silergy fails to rebut this presumption in its opening brief; therefore, it is reasonable for this Court to have jurisdiction over MPS's claims against them.

> **B.    If the Court is Unable to Find Personal Jurisdiction at this Juncture, MPS Should Be Permitted to Take Jurisdictional Discovery**

When personal jurisdiction is contested without the benefit of discovery, the plaintiff need only establish a *prima facie* case, with the record viewed in the light most favorable to the plaintiff.  *Elecs. For Imaging,* 340 F.3d at 1349; *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d at 1282.  If the Court does not agree that MPS has carried its burden, the Court should permit MPS to conduct jurisdictional discovery before ruling on Silergy's motion to dismiss.

Jurisdictional discovery is of particular relevance and should be granted where a plaintiff has made a sufficient threshold showing, as MPS has done here. *See Chi Mei*, 395 F.3d at 1323 (vacating dismissal of patent infringement action for lack of personal jurisdiction and remanding for jurisdictional discovery, noting " [patentee] has gone beyond factual allegations, and has already made a prima facie case for [defendant's] use of an established distribution network that likely results in substantial sales of its products in Delaware." ).

**C.** **Silergy Was Properly Served Under California Law By Effecting Substitute Service on Michael Grimm, an Officer of Silergy Tech, In Its Capacity as the General Manager of Silergy**

      **1.** **The Federal Rules Permit Service of Process Using California Law**

Federal Rule 4 governs the manner in which process must be served. Rule 4(h)(1) and Rule 4(e)(1) together permit a foreign corporation to be served in accordance with "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *See Mazda Motor of Am., Inc.*, 560 F. Supp. 2d 928, 929 (C.D. Cal. 2008); Fed. R. Civ. P. 4. Here, MPS elected to serve Silergy using California law through Silergy Tech—acting as Silergy's general manager—and simultaneously through its reported VP of Engineering, Michael Grimm.

      **2.** **Under California law, a Corporation May Be Served Through its General Manager**

Section 416.10 of the Code of Civil Procedure explains the methods by which a corporation can be served with process in California.

> A summons may be served on a corporation by delivering a copy of the summons and the complaint by any of the following methods: . . . (b) To the president, chief executive officer, or other head of the corporation, a *vice president*, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, *a general manager*, or a person authorized by the corporation to receive service of process."

Cal. Code Civ. Proc. § 416.10(b) (emphasis added).

This section expressly permits service on a general manager, who need not be "authorized by the corporation" to receive service of process. The conjunction "or" demonstrates that a general manager relationship may exist, and service may be effected, even if the person served is not "a person authorized by the corporation to receive service of process."

17

Thus, it does not matter whether Silergy Tech or its personnel claim to be authorized to receive service, or whether it agreed to accept service.  If Silergy Tech is a general manager of Silergy, and if MPS served Silergy Tech properly, service on Silergy is valid.

### 3.   Silergy Tech is Silergy's General Manager Under California Law

A "general manager" under the California statute has been interpreted to "include[ ] any agent of the corporation 'of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made.'"  *Gibble v. Car-Lene Research, Inc.*, 67 Cal. App. 4th 295, 313, 78 Cal. Rptr. 2d 892 (1998) (quoting *Eclipse Fuel Eng'g Co. v. Superior Court*, 148 Cal. App. 2d 736, 745-46, 307 P.2d 739 (1957)).[6]

Courts have routinely concluded that a foreign corporation's United States-based affiliate was its general manager.[7]  For example, in *Sims v. Nat'l Eng'g Co.*, 221 Cal. App. 2d 511, 34 Cal. Rptr. 537 (1963), the California Court of Appeals held that a California company that was the "exclusive sales agent" in California for an Illinois corporation was held to be a general manager, such that service of process on it effected service on the Illinois corporation.  221 Cal. App. 2d at 513-14, 34 Cal.

---

[6] An organization—such as Silergy Tech—can function as a general manager for service of process purposes.  *See Overland Machined Prods., Inc. v. Swingline, Inc.*, 224 Cal. App. 2d 46, 47-48, 36 Cal. Rptr. 330 (1964).

[7] *See, e.g., Socony-Vacuum Oil Co. v. Superior Court of City and County of San Francisco*, 35 Cal. App. 2d 92 (1939).  *See also Mazda Motor*, 560 F. Supp. 2d at 930 (concluding Mazda Motor Corporation's U.S. based distributor was its general manager); *Halo Elecs., Inc. v. Bel Fuse Inc.*, Slip Copy, No. C-07-06222, 2010 WL 2605195 (N.D. Cal. Jun. 28, 2010) (holding E&E Magnetic, a British Virgin Islands corporation with its principal place of business in Hong Kong was properly served through its wholly owned subsidiary in California, E&E USA when it "appears that there would be ample regular contact between E & E USA and E & E Magnetic and that contact would be of sufficient rank and character to make it reasonably certain that E & E Magnetic would be appraised of the service of process.").

18

Rptr. 537.  Here, since the defendant's relationship with the California entity "gave the defendant 'substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state,'" that relationship was sufficient to render the California entity a general manager for service of process. *Id.* at 515, 34 Cal. Rptr. 537 (quoting *Cosper v. Smith & Wesson Arms Co.*, 53 Cal. 2d 77, 84, 346 P.2d 409 (1959)); *see also Eclipse Fuel Eng'g*, 148 Cal. App. 2d at 745-46, 307 P.2d 739 (holding that a firm that was the "exclusive sales representative" in the state was the general manager for an out-of-state corporation).

Similarly, the arrangement between Silergy and Silergy Tech is sufficient to make Silergy Tech the "general manager" for Silergy for purposes of service of process.  First, the overlap of officers and staff between Silergy and Silergy Tech confirms the regular communication between these two affiliates such that Silergy would be put on notice of this action as a result of the service of process on Silergy Tech.  *See Overland Machined Prods.,* 224 Cal. App. 2d at 48, 36 Cal. Rptr. 330; *Cosper*, 53 Cal. 2d 77 at 83, 346 P.2d 409 (holding that a non-exclusive sales representative was a "general manager" for purposes of service of process because the sales representative had "ample regular contact" with the foreign defendant to make it "reasonably certain that the defendant will be apprised of the service made."). Indeed, as discussed *supra*, Wei Chen is an officer of both Silergy Tech and Silergy and serves as a direct conduit between the two.  Also, Michael Grimm of Silergy Tech (upon whom MPS served the Amended Complaint), is listed on multiple websites listing job postings for Silergy as a contact for Silergy, even as its VP of Engineering.  (*See* About Silergy Corp., *supra* section II, Ex. 13; Silergy Semiconductor Tech. Co., Ltd. Job Openings, *supra* section II, Ex. 14; Silergy Semiconductor Tech. Co., Ltd. Recruiting Info, *supra* section II, Ex. 15.)  Second, as explained above, Silergy Tech conducts significant research and design work on

19

1   behalf of Silergy.  Third, when Mr. Chen formed Silergy Tech, its original principal

2   place of business was at the same Lundy Avenue address as Silergy.  (Bus. Entity

3   Detail by Cal. Sec'y of State for Silergy Tech, *supra* section II), Ex. 8.)

4   Thus, as in *Sims*, having Silergy Tech in California and the close-knit

5   relationship between the two entities would give Silergy "substantially the business

6   advantages that it would have enjoyed if it conducted business" in the state itself.

7   *Sims*, 221 Cal. App. 2d at 515, 34 Cal. Rptr. 537; *see also Eclipse Fuel Eng'g Co.*,

8   148 Cal. App. 2d at 739-742, 307 P.2d at 741-43 (finding that sales representative in

9   CA was a "general manager" because the representative gave the foreign company

10  "in a practical sense, and to a substantial degree, the benefits and advantages it would

11  have enjoyed by operating through its own office or paid sales force, it was clearly

12  doing business in the state so as to be amenable to civil process." (internal quotations

13  and citations omitted)).  These connections between Silergy and Silergy Tech are of

14  sufficient rank and character to make it reasonably certain that Corp. would be

15  appraised of the service of process.  *See Halo Elecs.*, 2010 WL 2605195, at *2.

16  Further, pursuant to Cal. Code Civ. Proc. § 416.10(b), which permits service on

17  a vice president, MPS also simultaneously served Michael Grimm, who reportedly

18  serves as Silergy's VP of Engineering.  (*See* About Silergy Corp., *supra* section II,

19  Ex. 13.)  Accordingly, through Silergy Tech, or simultaneously through Michael

20  Grimm, MPS properly affected service on Silergy.

### 4.   If the Court is Unable to Determine Whether Silergy Was Properly Served, MPS Should Be Permitted to Take Additional Discovery on this Issue

23  For the reasons discussed above with regards to personal jurisdiction, should

24  the Court conclude that MPS has not properly made service of process on Silergy,

25  MPS respectfully requests the Court permit MPS to conduct additional discovery

26  before ruling on Silergy' s motion to dismiss on these grounds.

27

28

Monolithic Power Sys Memo in Opp to Silergy Mtn to Dismiss
Case No. CV-10-01533 CAS (AGRx)s

### D.    Service Under the Hague Convention is not Required Here

Silergy's motion contends that MPS must follow the Hague Convention in order to effect proper service.  Silergy is wrong for two reasons. *First*, there is no California law that requires that foreign corporations be served in their home country. To the contrary, California law expressly permits service of a corporation through authorized agents and general managers.  Cal. Code Civ. Proc. § 416.10(b).  Further, California law, like federal law, requires compliance with the Hague Convention only when process is served "outside the United States." Cal. Code Civ. Proc. § 413.10(c). *Second*, the Hague Convention applies only when service is effected by transmitting documents outside of the United States. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706-707 (1988); *see Mazda Motor*, 560 F. Supp. 2d at 930-31.

Where the law of a particular state permits a party to serve a foreign defendant inside the United States, through an agent, compliance with the Hague Convention is not necessary. *Id.*

> Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the [Hague] Convention has no further implications. The only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service.  And, contrary to VWAG's assertion, the Due Process Clause does not require an official transmittal of documents abroad every time there is service on a foreign national. Applying this analysis, we conclude that this case does not present an occasion to transmit a judicial document for service abroad within the meaning of Article 1. Therefore the Hague Service Convention does not apply, and service was proper.

*Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 707.

21

In *Volkswagenwerk Aktiengesellschaft*, Illinois law permitted service on a foreign corporation's domestic subsidiary as an involuntarily agent. The Supreme Court held that although the domestic subsidiary thereafter transmitted the documents outside of the United States, service was completed inside the United States and thus the Hague Convention did not apply, even though the domestic subsidiary "was certain to transmit the complaint to Germany to notify [the parent company] of the litigation." *Id*. at 707.

As explained above, California law reaches the same result as Illinois by allowing service upon a "general manager" and by defining "general manager" to include entities agents such as Silergy Tech.  Because a subsidiary relationship is not required in California, California law is actually broader than Illinois law.  Because such service is completed inside the United States, compliance with the Hague Convention is not required.  *See Yamaha Motor Co., LTD v. Superior Court*, 174 Cal. App. 4th 264, 271 (Cal. App. 4th Dist. 2009) (quoting *Volkswagenwerk*, 486 U.S. at 696) (finding that California law, like Illinois law in *Volkswagenwerk*, "provides for proper service of 'process on a foreign corporation by serving its domestic subsidiary which, under state law, is the foreign corporation's involuntary agent for service of process.'").

## IV. CONCLUSION

For the foregoing reasons, and any further argument and other matters as may be presented at the hearing, MPS respectfully requests that Silergy's Motion be denied. In the alternative, MPS asks that it be afforded a limited discovery period respect to the issues of personal jurisdiction and/or service of process, as needed, to further assess its allegations.

Monolithic Power Sys Memo in Opp to Silergy Mtn to Dismiss
Case No. CV-10-01533 CAS (AGRx)s

Dated:  November 6, 2010

Respectfully submitted,
**MONOLITHIC POWER SYSTEMS, INC.**

By its attorneys,


By   /s/ Jerry T. Yen
Jerry T. Yen
FISH & RICHARDSON, P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone:  650-839-5070
Facsimile:  650-839-5071

Ruffin B. Cordell
[Admitted *Pro Hac Vice*]
cordell@fr.com
FISH & RICHARDSON, P.C.
1425 K  Street, N.W., Suite 1100
Washington, D.C.  20005
Telephone:  202-783-5070
Facsimile:   202-783-2331

Of Counsel:
Indranil Mukerji
Rudhir B. Patel
FISH & RICHARDSON, P.C.
1425 K  Street, N.W., Suite 1100
Washington, D.C.  20005
Telephone:  202-783-5070
Facsimile:  202-783-2331

23

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2010, I electronically filed the foregoing MONOLITHIC POWER SYSTEMS, INC.'S MEMORANDUM IN OPPOSITION TO SILERGY CORPORATION'S MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the following attorneys of record who are Filing Users of the Court's Electronic Filing System.

KENNETH G. PARKER
kenneth.parker@haynesboone.com
HAYNES AND BOONE, LLP
18100 Von Karman Avenue, Suite 750
Irvine, California 92612
Telephone: (949) 202-3014
Telecopier: (949) 202-3114

By:   /s/ Jerry T. Yen
      Jerry T. Yen

1