UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1533 CAS (AGRx) | Date | June 20, 2011 |
|---|---|---|---|
| Title | MONOLITHIC POWER SYSTEMS, INC. v. SILERGY CORPORATION; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Indranil Mukerji<br>Rudhir Patel | Kenneth Parker |

**Proceedings:** **DEFENDANT SILERGY CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** (filed 11/17/10)

## I.   INTRODUCTION

On March 2, 2010, plaintiff Monolithic Power Systems, Inc. filed suit for patent infringement against defendant Silergy Corporation ("Silergy Corp"), a corporation organized and existing under the laws of the Cayman Islands. On September 21, 2010, plaintiff filed a first amended complaint ("FAC") naming as defendants Silergy Corp and Silergy Technology ("Silergy Tech"), a corporation organized and existing under the laws of the State of California, for infringement of United States Patent Nos. 6,897,643 ("the '643 Patent") and 7,714,558 ("the '558 Patent").

On November 17, 2010, Silergy Corp filed the instant motion to dismiss for lack of personal jurisdiction.[1] On December 6, 2010, plaintiff filed an opposition. Silergy Corp replied on December 20, 2010. On January 6, 2011, the Court entered an order permitting plaintiff to conduct limited jurisdictional discovery and continuing Silergy Corp's motion to dismiss. After the completion of limited jurisdictional discovery, on May 13, 2011 and May 16, 2011, respectively, plaintiff and Silergy Corp filed

---

[1] Silergy Corp also moved to dismiss for insufficient service of process. However, in its supplemental brief in support of its motion to dismiss for lack of personal jurisdiction, Silergy Corp withdrew its motion to dismiss for insufficient service of process. See Silergy Corp Supp. Mem. at 1 n.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1533 CAS (AGRx) | Date | June 20, 2011 |
|---|---|---|---|
| Title | MONOLITHIC POWER SYSTEMS, INC. v. SILERGY CORPORATION; ET AL. | | |

supplemental briefs regarding the instant motion. After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

## II. BACKGROUND

Silergy Corp is a company organized and existing under the laws of the Cayman Islands, and has its principal place of business in Xindian City, Taipei County 231. FAC ¶ 2. Silergy Corp develops and sells semiconductors, which are components of computer systems. Declaration of Kenneth G. Parker ("Parker Decl.") ¶ 2. Silergy Corp only sells its products through distributors in Asia. Supplemental Declaration of Dr. Wei Chen ("Supp. Chen Decl.") ¶ 4. These distributors, in turn, sell Silergy Corp products to sub-system manufacturers such as Compal Electronics ("Compal"), which is headquartered in Taiwan. Supp. Chen Decl. ¶ 5; Deposition of Wei Chen ("Chen Depo.") at 69:23–70:6. These sub-system manufacturers bid on projects for consumer electronics manufacturers such as Acer Inc. ("Acer"), who sell and distribute notebook computers. Supp. Chen Decl. ¶ 6. Electronics manufacturers such as Acer, market and ship varieties of notebook computers to retail stores throughout the United States and the world. Supp. Chen Decl. ¶ 7.

In July and August 2009, Silergy Corp employees met with Acer to discuss Acer's voltage requirements for a buck converter, a product manufactured by Silergy Corp for use in Acer's notebook computers. See Pl.'s Supp. Mem., Exhs. 1, 2 and 13; Chen Depo. at 50:17–51:19. By late 2009, Silergy Corp officials knew that its product, including the accused product, was used in specific models of Acer notebook computers. Pl.'s Supp. Mem., Exhs. 4–11, Chen Depo. at 109:7–19. For example, on November 26, 2009, an internal Silergy Corp e-mail sent to Isaac Chen, the Chairman, President and Chief Operating Officer of Silergy Corp states that Compal "will use [the accused product] in one Acer modified netbook project. . . . If everything goes well, it could be big." Pl.'s Supp. Mem., Exh. 4. Thereafter, internal Silergy Corp documents reflect Acer as the "End Product" or "End Customer" for the allegedly infringing component. Pl.'s Supp. Mem., Exhs. 6 and 9. On December 1, 2009, Silergy Corp forecasted sales of roughly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1533 CAS (AGRx) | Date | June 20, 2011 |
|---|---|---|---|
| Title | MONOLITHIC POWER SYSTEMS, INC. v. SILERGY CORPORATION; ET AL. | | |

500,000–600,000 units of the accused component for incorporation into Acer notebook computers.[2] Pl.'s Supp. Mem., Exh. 6.

Acer's notebook computers are sold to consumers by retailers, including Costco and Walmart, both over the internet and at retail stores throughout California. See Pl.'s Opp'n, Exhs. 6 and 7. On July 16, 2010, plaintiff purchased from Costco.com one Acer Aspire One AO533 Notebook computer, purportedly containing the accused component. Declaration of James Wong ("Wong Decl.") ¶¶ 4–5.[3] Costco shipped the Acer notebook computer to plaintiff at its San Jose, California headquarters from a location in Ontario, California. Id.

---

[2] It appears that in 2010, Silergy Corp shipped far more of the allegedly infringing components to its sub-system manufacturer, Compal. According to an internal Silergy Corp e-mail dated October 29, 2010, Silergy Corp shipped to Compal "more than 5 M [accused components] in the past three month [sic]. . . ." Pl.'s Supp. Mem., Exh. 12.

[3] The Court overrules Silergy Corp's objections to the Wong Declaration. See Reply at 2. As an initial matter, the Court rejects Silergy Corp's argument that the portions of the declaration based on hearsay are inadmissible. See Nuance Commc'ns., Inc. v. Abbyy Software House, 626 F.3d 1222, 1230 n.1 (Fed. Cir. 2010) ("there is no strict prohibition on a court's consideration of hearsay in connection with a motion to dismiss for lack of personal jurisdiction.") (internal quotation marks omitted). Furthermore, the Court finds that Wong has the requisite personal knowledge of the facts contained in his declaration. See Fed. R. Evid. 602. Finally, Silergy Corp objects to the statement in Wong's declaration that "[o]n information and belief, the chip marked 'BP0AD' from the Acer Notebook comes from the same SY8033 family product family [sic] as the chip marked 'BP9WA' purchased [from Silergy Corp] by [plaintiff]." Wong Decl. ¶ 5. Silergy Corp argues that this statement calls for technical knowledge, and there is no information qualifying Wong as an expert. Reply at 2. Given the early stage of the proceedings and limited scope of jurisdictional discovery, the Court concludes that Wong's comparison of the components at issue is sufficient.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1533 CAS (AGRx) | Date | June 20, 2011 |
|---|---|---|---|
| Title | MONOLITHIC POWER SYSTEMS, INC. v. SILERGY CORPORATION; ET AL. | | |

O

## III.   LEGAL STANDARD

The law of the Federal Circuit, rather than the Ninth Circuit, applies to the determination of personal jurisdiction in patent cases. Nuance Commc'ns, 626 F.3d at 1230. "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." 3d Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1376–77 (Fed. Cir. 1998). California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state law and federal due process are the same. Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). In order for a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific. A court has general jurisdiction over a nonresident defendant when that defendant's contacts within the forum state are "continuous and systematic," even if the cause of action "has no relation to those contacts." LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000). The court may exercise specific jurisdiction where "the defendant 'has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.' " Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1350–51 (Fed. Cir. 2002) (quoting Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (quoting Int'l Shoe, 326 U.S. at 320). Where, as here, the parties have the opportunity to conduct jurisdictional discovery, the plaintiff bears the burden of proving personal jurisdiction by a preponderance of the evidence. Pieczenik v. Dyax Corp., 265 F.3d 1329, 1334 (Fed. Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1533 CAS (AGRx) | Date | June 20, 2011 |
|---|---|---|---|
| Title | MONOLITHIC POWER SYSTEMS, INC. v. SILERGY CORPORATION; ET AL. | | |

## IV. DISCUSSION

### A. Minimum Contacts

Plaintiff argues that the Court may exercise specific jurisdiction over Silergy Corp under a "stream of commerce" theory because Silergy Corp sells the accused components to third parties which integrate the products into consumer electronic products, such as the Acer notebook computer, which are sold in California. Opp'n at 8–11.

The Supreme Court has held that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297–98 (1980). A divided Court expanded upon the stream of commerce theory in Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102 (1987). In Asahi, four Justices, led by Justice O'Connor, found that due process requires that a defendant do more than simply place a product in the stream of commerce; defendant's actions must be "*purposefully directed toward the forum State*." Id. at 112 (emphasis in original). Justice Brennan and three other Justices disagreed that any additional conduct was necessary before finding the exercise of personal jurisdiction to comport with due process. Id. at 117. In Justice Brennan's view, due process merely requires that a defendant place its products into a stream of commerce where there is a "regular and anticipated flow of products from manufacture to distribution to retail sale." Id. at 117.

The Court of Appeals for the Federal Circuit has not explicitly adopted either stream of commerce approach. See Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1322 n.7 (Fed. Cir. 2005) ("We have yet to decide whether Justice Brennan's standard is sufficient to satisfy due process, because we have yet to be presented with facts that do not meet the more rigorous standard adopted by Justice O'Connor."). However, the Federal Circuit's decision in Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564 (Fed. Cir. 1994) is instructive. In Beverly Hills Fan, the plaintiff brought a patent infringement suit in Virginia against a Chinese corporation that manufactured the accused product in Taiwan, and a New Jersey corporation that imported the accused product into the United States. Id. at 1560. Neither the manufacturer nor the importer made any direct sales in Virginia, with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1533 CAS (AGRx) | Date | June 20, 2011 |
|---|---|---|---|
| Title | MONOLITHIC POWER SYSTEMS, INC. v. SILERGY CORPORATION; ET AL. | | |

exception of a small one-time sale of unrelated goods. Id. Nevertheless, plaintiff's private investigator reported purchasing one of the accused ceiling fans from a retailer in Virginia, and store employees confirmed that fifty-two other ceiling fans were available for sale at different Virginia stores. Id. at 1560–61. A manual accompanying the accused fans identified the distributor as the source of the product and provided a warranty that the distributor would honor. Id. at 1560.

Given these facts, the court concluded that under either Justice O'Connor's or Justice Brennan's version of the stream of commerce theory, plaintiff met the required jurisdictional showing. Id. at 1566. The court emphasized that the facts were sufficient to show that "defendants purposefully shipped the accused fan into Virginia through an established distribution channel." Id. at 1565. The presence of at least fifty-two accused ceiling fans in Virginia suggested that there was an ongoing and intentional commercial relationship between defendants and Virginia-based retailers. Id. at 1564. From that relationship, the court inferred that defendants could have reasonably foreseen that the distribution channel terminated in Virginia. Id. Accordingly, the court concluded that defendants' conduct satisfied the minimum contacts requirement of due process and supported the exercise of personal jurisdiction over defendants. Id. at 1565–66.

The Court finds that plaintiff has met its burden of proving by a preponderance of the evidence that the stream of commerce theory applies because Silergy Corp employs an established distribution channel that ends in California. Here, the evidence establishes that Silergy Corp has met with Acer to facilitate the incorporation of Silergy Corp's technology into Acer's notebook computers. Pl.'s Supp. Mem., Exhs. 1 and 2; Chen Depo. at 50:17–51:19. Furthermore, Silergy Corp sells the accused component to its third-party distributors in large quantities. Pl.'s Supp. Mem., Exhs. 6 and 12. It is also clear that Silergy Corp knows that its sub-system manufacturers, such as Compal, sell the components for incorporation into Acer computers. Pl.'s Supp. Mem., Exhs. 4–11. Finally, plaintiff has purchased at least one Acer notebook computer containing the accused component from Costco in California. Wong Decl. ¶ 4. Given these facts, the Court concludes that Silergy Corp's accused component was transported to California "through and established distribution channel." See Beverly Hills Fan, 21 F.3d at 1565.

Silergy Corp does not dispute that it knows that its distributors do business with Compal and other sub-system manufacturers, nor that its products are purposefully

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1533 CAS (AGRx) | Date | June 20, 2011 |
|---|---|---|---|
| Title | MONOLITHIC POWER SYSTEMS, INC. v. SILERGY CORPORATION; ET AL. | | |

directed to Compal for integration into Compal's own products. Silergy Corp's Supp. Mem. at 3. Silergy Corp argues, however, that its involvement in the supply chain ends there. Id. Silergy Corp maintains that although Compal may choose to bid on projects for companies such as Acer, Silergy Corp never knows whether its chip eventually ends up in a component which, in turn, ends up in an Acer computer. Id.

Silergy Corp's argument is not supported by the facts uncovered during jurisdictional discovery. Beginning in 2009, Silergy Corp executives began meeting with Acer to facilitate the incorporation of Silergy Corp components into Acer computers. See Pl.'s Supp. Mem., Exh. 1. Indeed, Dr. Isaac Chen, the Chairman, President and Chief Operating Officer of Silergy Corp, acknowledged during his deposition that the purpose of these meetings was to discuss Acer's voltage power requirements for a "buck converter," a product manufactured by Silergy Corp. Chen Depo. at 50:17–51:19. Furthermore, internal Silegy Corp emails confirm that the "End Product" of Silergy Corp components was an "Acer NB" (i.e., Acer Notebook). Pl.'s Supp. Mem., Exh. 6. Therefore, the Court finds by a preponderance of the evidence that it was reasonably foreseeable to Silergy Corp that its components were incorporated into Acer computers.

Silergy Corp further contends that even if it knew that Compal won a bid with Acer involving Silergy Corp's components, that knowledge alone would be insufficient to support a finding that its products would end up in California. Silergy Corp's Supp. Mem. at 3–4. Silergy Corp contends that Acer markets and ships multiple varieties of laptops with different components to different markets. Id. at 4 (citing Supp. Chen. Decl. ¶ 7). Laptops designed and marketed for the Japanese market have different components than laptops designed and marketed for the United States, according to Silergy Corp. Id. As such, Silergy Corp asserts that even if it knows that Compal was buying its chips for supply to Acer, there is no evidence that Silergy Corp knew that the Acer laptops were bound for the California market. Id. The Court disagrees. By distributing the accused component in large quantities to sub-system manufacturers (through third-party distributors) for incorporation into Acer computers, Silergy Corp could reasonably foresee that its component parts would end up in California. See LG.Phillips LCD Co. v. Chi Mei Optoelectronics Corp., 441 F. Supp. 2d 333, 340–41 (D. Del. 2008) (manufacturer of products using liquid crystal display technology could reasonably foresee being haled into court in Delaware where it had long-term agreement to provide

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1533 CAS (AGRx) | Date | June 20, 2011 |
|---|---|---|---|
| Title | MONOLITHIC POWER SYSTEMS, INC. v. SILERGY CORPORATION; ET AL. | | |

its products to global computer company and shipped substantial quantities of its products to the United States).

Silergy Corp maintains that two decisions from the Western District of Wisconsin compel a different result. See Silergy Corp's Supp. Mem. at 4–7 (citing SanDisk Corp. v. ITE Techs., Inc., No. 07-cv-605-bbc, 07-cv-607-bbc, 2010 U.S. Dist. LEXIS 32909 (W.D. Wisc. April 2, 2010) and LG Elecs., Inc. v. Quanta Computer Inc., 520 F. Supp. 2d 1061 (W.D. Wisc. 2007)). A close reading of both cases, however, demonstrates that they support plaintiff's position rather than that of Silergy Corp. In SanDisk, the court rejected plaintiff's stream of commerce argument where the defendant merely sold components to third-parties which incorporated them into end products, but had no knowledge of the third-parties' distribution channels. 2010 U.S. Dist. LEXIS 32909, at *30–31. The court explained that "even if [defendant] could be said to know where [the third-parties] shipped their products, [defendant] still might not know where its products end up." Id. According to the SanDisk court, to permit an inference that it is reasonably foreseeable that defendant's products are likely to end up in the forum state, there must be evidence that "(1) [the third parties'] products are likely to end up in [the forum state] and (2) either [defendant's] products can be expected to be found in a large number of [the third parties'] products overall or at least can be expected to be found in the batch likely to arrive in [the forum state]." Id. at *31–32. Here, plaintiff has shown that Acer's products are likely to end up in California and, due to the scale of Silergy Corp's distribution of the accused component, Silergy Corp's products can be expected to be found in a large number of Acer products overall. Accordingly, plaintiff has satisfied the test set forth in SanDisk.

In LG Elecs, plaintiff brought a patent infringement suit against defendant relating to digital versatile discs (DVD) drives. 520 F. Supp. 2d at 1065. Plaintiff argued that defendant had minimum contacts with Wisconsin because there was an established distribution channel between defendant and Dell, a notebook computer company, that ended in Wisconsin. Id. at 1071. The evidence showed that defendant worked with Dell to incorporate its DVD drives into Dell computers that were distributed throughout the United States, met with Dell representatives to qualify its DVD drives, and delivered its DVD drives to Dell in Texas. Id. Plaintiff, however, "failed to present evidence that Dell's computers containing defendant's DVD drives were present or sold in Wisconsin." Id. Because plaintiff failed to establish a Wisconsin termination point, the court held that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1533 CAS (AGRx) | Date | June 20, 2011 |
|---|---|---|---|
| Title | MONOLITHIC POWER SYSTEMS, INC. v. SILERGY CORPORATION; ET AL. | | |

plaintiff failed to show an established distribution system between defendant, Dell and Wisconsin retailers or consumers. Id.

In this case, as in LG Elecs, plaintiff has established that Silergy Corp met with Acer to facilitate the incorporation of Silergy Corp's components into Acer's notebook computers. Furthermore, although Silergy Corp does not deliver its components directly to Acer, it is aware that sub-system manufacturers sell its products for incorporation into Acer computers. Unlike LG Elecs, however, here plaintiff has presented evidence that Acer's computers containing Silergy Corp's accused product were sold in California. Accordingly, plaintiff has shown a California termination point, and demonstrated an established distribution channel between Silergy Corp, third-party distributors, sub-system manufacturers (i.e., Compal), Acer and California. See LG Elecs, 520 F. Supp. 2d at 1071.

In sum, the Court finds that plaintiff has shown by a preponderance of the evidence that Silergy Corp placed the accused component into the stream of commerce, through an established distribution channel ending in California.[4] See Beverly Hills Fan, 21 F.3d at 1566. Accordingly, the Court concludes that Silergy Corp has sufficient "minimum contacts" with California to satisfy due process.

  B.  **Reasonableness**

Notwithstanding the existence of Silergy Corp's minimum contacts with California, due process requires that the assertion of personal jurisdiction over Silergy Corp in California comport with "fair play and substantial justice." Beverly Hills Fan, 21 F.3d at 1568. With respect to this inquiry, the burden of proof is on Silergy Corp to present a "compelling case" that jurisdiction in this forum is unreasonable. See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1362 (Fed. Cir. 2006). Cases where the exercise of personal jurisdiction is unreasonable are "limited to

---

[4] Because the Court finds that Silergy Corp has sufficient minimum contacts with California based upon the stream of commerce theory, the Court declines to address whether Silergy Corp has minimum contacts with California based upon the theory that it is an alter ego of Silergy Tech, a California corporation. See Pl.'s Supp. Mem. at 5–7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1533 CAS (AGRx) | Date | June 20, 2011 |
|---|---|---|---|
| Title | MONOLITHIC POWER SYSTEMS, INC. v. SILERGY CORPORATION; ET AL. | | |

the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." Beverly Hills Fan, 21 F.3d at 1568.

Silergy Corp has failed to meet its burden. California has a substantial interest in providing a forum for litigating plaintiff's patent infringement suit. Id. In addition, the Court concludes that litigating this case in California will not place such a substantial burden on Silergy Corp so as to violate its due process rights. Id. at 1569 ("it is recognized that progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome.") (internal quotation marks omitted). Furthermore, Silergy Corp, through its dealings with Silergy Tech, which is based in California, is not ignorant of the judicial system in the United States. Id.

## IV. CONCLUSION

In accordance with the foregoing, the Court finds that it has personal jurisdiction over Silergy Corp. Therefore, the Court DENIES defendant Silergy Corp's motion to dismiss for lack of personal jurisdiction.

IT IS SO ORDERED.

|  | 00 | : | 10 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |